IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MAURICE LAMONT SEARS, # 216192, :

    Plaintiff,               :

vs.                     :   CIVIL ACTION 11-0719-KD-B

ANTHONY WILLIAMS, *et al.*,   :

    Defendants.         :

## REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding pro se and
informa pauperis, filed a Complaint under 42 U.S.C. § 1983,
which has been referred to the undersigned for appropriate
action pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule
72.2(c)(4).    After careful review, it is recommended that
Defendants White, Meyer, Hetrick, Mosley, Thomas, Bentley, and
the Alabama Personnel Department be dismissed from this action
with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii)
as the claims against them are either frivolous or fail to state
a claim upon which relief can be granted.    However, Plaintiff's
claims against Defendant Williams should proceed.

## I.  Standards of Review Under 28 U.S.C. § 1915(e)(2)(B).

Because Plaintiff is proceeding informa pauperis, the Court
is reviewing his Amended Complaint (Doc. 12) under 28 U.S.C.

§ 1915(e)(2)(B).   Under § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989).   A claim is frivolous as a matter of law where, inter alia, the defendants are immune from suit, Id. at 327, 109 S.Ct. at 1833, or the claim seeks to enforce a right that clearly does not exist. Id.

Moreover, a complaint may be dismissed under 28 U.S.C.§ 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997).   To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations must show plausibility. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).   That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 555, 557, 127 S.Ct. at 1965, 1966 (second brackets in original).   But "[t]hreadbare recitals of the elements of a cause of action,

2

supported by mere conclusory statements, do not suffice." Id. Furthermore, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim is also warranted. Jones v. Bock, 549 U.S. 199, 215, 127 S.Ct. 910, 920-21, 166 L.Ed.2d 798 (2007).

When considering a pro se litigant's allegations, a court gives them a liberal construction holding them to a more lenient standard than those of an attorney. Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 595-596, 30 L.Ed.2d 652 (1972). The court, however, does not have "license . . . to rewrite an otherwise deficient pleading [by a pro se litigant] in order to sustain an action." GJR Investments v. County of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998), overruled on other grounds by Randall v. Scott, 610 F.3d 791, 710 (11th Cir. 2010) (relying on Iqbal, 566 U.S. 662, 129 S.Ct. 1937). Furthermore, a court treats as true factual allegations, but it does not treat as true conclusory assertions or a recitation of a cause of action's elements. Iqbal, 566 U.S. at 681, 129 S.Ct. at 1951. In addition, a pro se litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure." Moon v. Newsome, 863 F.2d 835, 837 (11th Cir.), cert. denied, 493 U.S. 863 (1989).

**II.  Discussion.**

    **A.  Amended Complaint. (Doc. 12).**

The action is before the Court on Plaintiff's superseding Amended Complaint, which was filed at the Court's directive. (Docs. 3, 8, 11).  In the Amended Complaint, Plaintiff names as Defendants Lieutenant Anthony Williams, Warden Cynthia White, Warden Walter Meyer, Captain Richard Hetrick, Southern Regional Coordinator Gwendolyn Mosley, Commissioner Kim Thomas, Governor Robert Bentley, and the Personnel Department of Alabama.

For purposes of this Report and Recommendation, the Court treats as true the allegations contained in Plaintiff's Amended Complaint although, it may later be determined that the actual facts are different than alleged. See Smith v. Knox County Jail, 666 F.3d 1037, 1039 (7th Cir. 2012) (finding that for appeal purposes, the court took as true the allegations in a complaint that was dismissed pursuant to 28 U.S.C. § 1915A); Cottone v. Jenne, 326 F.3d 1352, n.1 (11th Cir. 2003) ("Because we must accept the allegations of plaintiffs' amended complaint as true, what we set out in this opinion as 'the facts' for Rule 12(b)(6) purposes may not be actual facts.").

In his Amended Complaint, Plaintiff alleges that he was assaulted on May 28, 2011, when Defendant Anthony Williams, who was "assisted" by Officer Kennkel, "slamm[ed] [Plaintiff] to the concrete repeatedly, choking, hitting and dragging [him] up the

4

main hallway about 30 to 50 feet to the seg unit." (Id. at 4). Plaintiff further alleges that Defendant Williams left the building, "retriev[ed] a loaded 12 gauge shotgun," and re-entered the building. (Id. at 8). According to Plaintiff, when Defendant Williams returned, the other officer was still "abusing" Plaintiff, and that Defendant Williams then "pumped the loaded shotgun, plac[ed] a live round in the firing chamber and placed the shotgun to [Plaintiff's] head[, and] theaten[ed] to blow [it] off[.]" (Id.). Plaintiff asserts that although his hands were handcuffed behind his back, Defendant Williams continued to press the shotgun against his head and repeatedly threatened to kill him. (Id.). Plaintiff further alleges that he suffered injuries to his head and neck for which he was treated at medical unit, and that he has also suffered psychological and mental injuries, which have required therapy and medication "until the filing of this . . . action." (Id.). Plaintiff requests an award of $8 million for his injuries and the implementation of "tougher standard of protection and enforcement of human rights and civil rights in Alabama Prison and an independent Board Grievance Review." (Id. at 7).

While Plaintiff previously identified other individuals as being involved in the May 28, 2011 assault, in his Amended Complaint, Defendant Williams is the only Defendant alleged to have been personally involved in the assault. (Id. at 5).

Plaintiff's claims whereas, Plaintiff's prior pleadings named other officials involved in the assault as defendants. Plaintiff's claims against the other Defendants, which are discussed in turn, are due to be dismissed.

**B. Supervisor Liability.**

Based on the allegations in Plaintiff's Amended Complaint, the Court is treating the individual Defendants who were not directly involved in the May 28th assault as supervisory officials. The law is well established in this Circuit that supervisory officials cannot be "liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Cottone, 326 F.3d at 1360 (internal quotation marks and citation omitted); see Monell v. Department of Social Servs. of New York, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978) (in a § 1983 action, a municipality cannot be held liable either vicariously or under the theory of respondeat superior for the acts of an employee). Liability against a supervisor can only be established by showing the supervisor "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions ... and the alleged constitutional deprivation." Cottone, 326 F.3d at 1360. This causal connection may be established by showing that "a history of widespread abuse puts the responsible supervisor on notice of

the need to correct the alleged deprivation, and he fails to do so, . . . or when the supervisor's improper custom or policy ... resulted in deliberate indifference to constitutional rights, or when . . . [a] supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Id. (citations and quotation marks omitted).

In addition, after Iqbal, supra, Plaintiff must allege that each supervisory Defendant violated the Constitution "through the official's own individual actions[.]" T.E. v. Grindle, 599 F.3d 583, 588 (7th Cir. 2010) ("While it appears that our precedent would have previously allowed a plaintiff to recover from a supervisor based on that supervisor's 'deliberate indifference' toward a subordinate's purposeful discrimination, (citation omitted), after Iqbal a plaintiff must also show that the supervisor possessed the requisite discriminatory intent."); see Jenkins v. Drummond, No. CV410-008, 2010 WL 1737601, at *2 n.2 (S.D. Ga. 2010) (unpublished) ("The plaintiff must allege some facts showing that the supervisory official was, like his subordinate, deliberately indifferent to the plaintiff's constitutional rights."). Furthermore, "[t]he standard by which a supervisor is held liable . . . for the actions of a subordinate is extremely rigorous." Braddy v. Florida Dep't of Labor & Employment Sec., 133 F.3d 797, 802 (11th Cir.1998).

7

In Iqbal, 556 U.S. 662, 129 S.Ct. 1937, the Supreme Court held that Attorney General John Ashcroft and Director of the F.B.I. Robert Mueller, as supervisors, were entitled to qualified immunity because the allegations did not state a plausible claim. Id. at 675-82, 129 S.Ct. at 1948-52. The Court found that the complaint's allegations were "bald" and "conclusory" and did not "plausibly suggest" that they acted with "discriminatory purpose," which was a required element of the plaintiff's claim. Id. at 681, 683, 129 S.Ct. at 1951-52. Because vicarious liability is not available in § 1983 actions, the Court reasoned that a plaintiff must plead that each defendant by his own actions violated the Constitution. Id. at 676, 129 S.Ct. at 1948.

In the present action, Plaintiff's allegations are vague and lacking in concrete, supporting facts. He has not alleged widespread abuse, that a supervisor directed an employee to act unlawfully, or that with knowledge of an employee's unlawful act, a supervisor failed to stop the employee. Rather, Plaintiff's allegations amount to an improper attempt to hold the supervisory Defendants liable vicariously under the theory of respondeat superior, or on account of a policy.

Even though it is incumbent on Plaintiff to allege facts reflecting that each supervisory Defendant through his own individual actions was deliberately indifferent to Plaintiff's

Eighth Amendment rights, and show through facts that each claim is plausible, <u>Iqbal</u>, 556 U.S. at 678-79, 129 S.Ct. at 1949-50, Plaintiff has not done so. <u>Farmer v. Brennan</u>, 511 U.S. 825, 828, 114 S.Ct. 1970, 1974, 128 L.Ed.2d 811 (1994) (ruling that "[a] prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment"); <u>see also</u> <u>McCreary v. Parker</u>, 456 F. App'x 790, 793 (11th Cir. 2012) (discussing supervisor liability where there was a substantial risk of serious of serious harm). Plaintiff has not pled facts reflecting that the supervisory Defendants each engaged in acts that were deliberately indifferent to his Constitutional rights.

### 1.  Defendants Cynthia White and Walter Meyer.

Plaintiff alleges that Defendants White and Meyer, both wardens at Fountain, have been "negligent" in "select[ing]" and "screen[ing]" Defendant Williams, a violent person who "has no regard for human or civil rights of [prisoners], and in failing to prosecute and to hold accountable all employees involved from the employee that gave him the loaded shotgun from the tower and employee that unlocked the gates for him to re-enter the prison hallway." (<u>Id.</u> at 8).

Aside from asserting that these Defendants were negligent in "selecting" and "screening" Defendant Williams, Plaintiff has not provided any supporting facts regarding his claims against

Defendants White and Meyer. Plaintiff has not asserted any improper employment practices by these Defendants nor are there any allegations that they knew that Defendant Williams had a violent background yet nevertheless selected him for employment. Given these absence of facts, Defendant's use of the terms "selecting" and "screening" are simply bald, unsupported, conclusory allegations. In the absence of facts supporting these assertions, he has failed to state a plausible claim. Moreover, the allegations of "selecting" and "screening" Defendant Williams implies, but falls way short of showing that Defendants White and Meyer were responsible for the selection or hiring of Defendant Williams.

Furthermore, while Plaintiff alleges that these Defendants were "negligent" in "screening" and "selecting" Defendant Williams, he has presented no facts which suggest that they engaged in negligent conduct or something more culpable. Moreover, negligence is not recognized as a theory of liability in a § 1983 action. Daniels v. Williams, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986). Due to the absence of any facts that would establish a "selecting" or "hiring" claim and that would show deliberate indifference, the Court finds that Plaintiff's claim against Defendants White and Meyer is not plausible. See Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 411, 117 S.Ct. 1382, 1392, 137 L.Ed.2d 626 (1997)

("Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute "'deliberate indifference.'"); Williams v. DeKalb County, 327 F. App'x 156, at *6 (11th Cir. May 6, 2009)(observing the Supreme Court's standard requires a showing that the injury suffered by the plaintiff was highly likely to be inflicted by the officer and that the connection between the officer's background and specific constitutional violation be strong, and finding the evidence was insufficient to show that the county knew about the officer's propensity for violence and consciously disregarded it).

In addition, Plaintiff alleges that Defendants White and Meyer failed to prosecute and hold Defendant Williams and other accountable for the attack. These allegations doe not implicate a constitutional right. The Constitution does not impose any duty upon Defendants White and Meyer to prosecute Defendant Williams, and Plaintiff lacks standing to assert a claim of this nature. In other words, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another[.]" Linda R.S. v. Richard D., 410 U.S. 614, 619, 93 S.Ct. 1146, 1149, 35 L.Ed.2d 536 (1973); see Otero v. United

States Attorney General, 832 F.2d 141, 141 (11th Cir. 1987) (affirming the dismissal of an action seeking the writ of mandamus to require the defendants to investigate and prosecute a former Florida State Attorney).  Accordingly, the Court finds that Plaintiff has failed to state a claim upon which relief can be granted against Defendants White and Meyer.

### 2.  Defendant Richard Hetrick.

Plaintiff alleges that Defendant Hetrick, captain of the guard, failed "to provide a safety measure protocol of preventing postal employees after exiting the building and returning with a loaded firearm" and "to provide security measures to prevent human rights and civil rights violations of inmates . . . at Fountain." (Id. At 9).  Plaintiff has not defined the term "postal"; however, because Defendant Williams is alleged to be a state corrections employee, as opposed to an employee with the United States Post Office, the Court deduces that Plaintiff used this term to indicate, although not clearly, that Defendant Williams was very angry. [1]  There are no allegations that assaults by Williams were a recurrent or widespread problem such that Defendant Hetrick was on notice of

---

[1] "Going postal, in American English slang, means becoming extremely and uncontrollably angry, often to the point of violence, and usually in a post office or other workplace environment." WIKIPEDIA, Going Postal, http://www.wikipedia.org (on the main page search term "going postal") (last visited December 5, 2012).

12

the need to formulate a policy.  Rather, Plaintiff's allegations are to the contrary in that they refer to "rogue employees," whom the Court understands to be persons "[o]perating outside normal or desirable controls." [2]  (Doc. 12 at 10).  Thus, it appears that Defendant Williams' alleged conduct was independent, unanticipated, and outside the typical conduct of an officer.  Furthermore, Plaintiff has not proffered any allegations that suggest that Defendant Hetrick was deliberately indifferent by not having such a policy in place nor has he identified what policy would have prevented "rogue employee" from engaging in assaults.

In addition, Plaintiff's allegations are nebulous and generic, and do not provide fair notice of a claim against Defendant Hetrick.  See Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993) (a plaintiff is required to provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests").  Accordingly, Plaintiff has failed to state a claim against Defendant Hetrick upon which relief can be granted.

---

[2] THE FREE DICTIONARY BY FARLEX, http://www.thefreedictionary.com/rogue (last visited December 5, 2012).

### 3.  Defendant Gwendolyn Mosley.

Defendant Mosley, Southern Regional Coordinator, is alleged to be responsible "for overseeing procedures, policies, [and] employees of Fountain to ensur[e] the safety and welfare of inmates['] human rights and civil rights['] . . . to prevent [the] rogue operation of . . . Fountain that resulted in[] the violations of [Plaintiff's] civil rights." (Doc. 12 at 9).  This claim is vague and conclusory due to the awkward manner in which it is expressed.  As best the Court can discern, Plaintiff is alleging that Defendant Mosley is responsible for ensuring that inmates' constitutional rights are protected and for preventing the "rogue" operation of Fountain, which caused the violation of his civil rights.  These allegations lack the specificity as they do not causally connect this supervisory Defendant to a violation of Plaintiff's constitutional rights.  Moreover, the allegation as described by Plaintiff does not constitute deliberate indifference.  The Court thus finds that Plaintiff is attempting to hold Defendant Mosley liable, vicariously or under the theory of <u>respondeat</u> <u>superior</u> for the actions of a subordinate.  As noted <u>supra</u>, liability on these bases is not recognized under § 1983. <u>Monell</u>, 436 U.S. at 691, 98 S.Ct. at 2036.  And, Plaintiff's reference to the "rogue" operation of the facility suggests that the situation was not so widespread

as to put Defendant Mosley on notice, which is necessary in order to make a showing of deliberate indifference. Accordingly, Plaintiff has failed to state a plausible claim against Defendant Mosley.

### 4. Defendant Kim Thomas.

Defendant Thomas is alleged to be responsible "for state prison operation . . . [and] state officials and employees within the D.O.C. adher[ing] to state and federal rights of ensuring human rights and civil rights protection of individuals confined within the Alabama Prison System." (Doc. 12 at 9). In addition, Plaintiff complains that Defendant Thomas failed to have an independent review board in the county where a prison is located to "discourage human rights and civil rights violations [by] state employees. . . ." (Id.).

Based on a review of the allegations, it is readily apparent that Defendant Thomas is sued solely due to his position as Commissioner of the Alabama Department of Corrections, which Plaintiff believes makes him responsible for the actions of ADOC's employees. However, the law is well settled that "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Cottone, 326 F.3d at 1360 (quotation marks and citation omitted). Furthermore, Plaintiff has not alleged facts reflecting

deliberate indifference. Additionally, the Court is not aware of a constitutional or federal mandate requiring independent, county review boards of prisons and activities within a prison's walls. Accordingly, the Court finds that Plaintiff has failed to state a claim against Defendant Thomas.

     **5. Defendant Robert Bentley.**

     Defendant Bentley, Governor of Alabama, is alleged to "approve[d] the appointment of executive officers of . . . agencies [which] ensure compliance [with] state and federal policies of providing human rights and civil rights [so as to] protect[] . . . inmates within their custody and [to] prevent[] rogue prison employees [from] violating [Plaintiff's] human rights and civil rights at Fountain prison." (Doc. 12 at 10). Based on these allegations, it is clear that Defendant Bentley is sued solely due to his position as Governor of the State of Alabama, which Plaintiff believes makes him liable for the acts of his subordinates. As previously noted, the law is clear that "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Cottone, 326 F.3d at 1360 (quotation marks and citation omitted). Moreover, Plaintiff's allegations against Defendant Bentley are convoluted, vague, and conclusory, and are absent of any facts showing that Defendant Bentley was deliberately indifferent.

Accordingly, the Court finds that Plaintiff has not stated a plausible claim against Defendant Bentley.  <u>Monell</u>, 436 U.S. at 691, 98 S.Ct. at 2036.

**6. Defendant Personnel Department of Alabama.**

Plaintiff claims that Alabama's Personnel Department is responsible for "monitoring and reviewing state employees['] operations of . . . Fountain Prison[] for human rights/civil rights protection and prevention of rogue operations [by] state employees [which caused a] human rights violation of [Plaintiff]." However, Defendant Personnel Department is not a "person" such that it can be sued under § 1983. "A successful section 1983 action requires a showing that the conduct complained of (1) was committed by a <u>person</u> acting under color of state law and (2) deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States." <u>Harvey v. Harvey</u>, 949 F.2d 1127, 1130 (11th Cir. 1992) (emphasis added).  The State and its "arms," however, are not "'persons' for the purpose of a § 1983 action." <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 70, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989).  Defendant Personnel Department is a department of the State of Alabama, Alabama Code § 36-26-2, <u>et seq.</u>, and, therefore, is not a "person" that may be sued for § 1983 purposes.

In addition, the State and its departments are not subject to being sued in federal court. U.S. CONST. amend. XI ("The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."). The two exceptions to Eleventh Amendment immunity are if the state has waived its immunity or Congress has abrogated a state's Eleventh Amendment immunity in § 1983. Carr v. City of Florence, Ala., 916 F.2d 1521, 1524 (11th Cir. 1990). Alabama has not waived its Eleventh Amendment immunity. See Alabama v. Pugh, 438 U.S. 781, 782, 98 S.Ct. 3057, 3057-58, 57 L.Ed.2d 1114 (1978) ("[S]uit against the State and its Board of Corrections is barred by the Eleventh Amendment,unless Alabama has consented to the filing of such a suit. . . . [However,] no consent could be given under Art. I, § 14, of the Alabama Constitution, which provides that 'the State of Alabama shall never be made a defendant in any court of law or equity.'"); see Carr, 916 F.2d at 1525 ("The state of Alabama has not waived its immunity."). Nor has Congress in section 1983 abrogated a state's Eleventh Amendment immunity. Id. (citing Quern v. Jordan, 440 U.S. 332, 345, 99 S.Ct. 1139, 1147, 59 L.Ed.2d 358 (1979)). Plaintiff's claims against Defendant Personnel Department are, therefore, frivolous as a matter of law.

## III.  Conclusion.

Based upon the foregoing reasons, it is recommended that Plaintiff's claims against Defendants White, Meyer, Hetrick, Mosley, Thomas, Bentley, and Personnel Department be dismissed from this action with prejudice pursuant to 28 U.S.C. 1915(e)(2)(B)(i) and (ii) as the claims against them are either frivolous or fail to state a claim upon which relief can be granted.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this **3rd** day of **January,2013.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1.   **Objection**.  Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections with the clerk of court.   Failure to do so will bar a <u>denovo</u> determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. <u>See</u> 28 U.S.C. § 636(b)(1)(C); <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988). The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[3] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed <u>denovo</u> and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

---

[3] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed. R. Civ. P. 72(b)(2).

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **Opposing party's response to the objection.**   Any opposing party may submit a brief opposing the objection within fourteen (14) days of being served with a copy of the statement of objection.  Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.   **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.